JOHN GREGG v. E. P. GREGG, ADMINISTRATOR, ETC.

1. The last clause of the third section of the act of May 15, 1838, (Paschal's Digest, Article 4985,) which enacted that no mortgage should take lien unless recorded as thereinbefore provided, is unambiguous though improvident, and so long as it remained in force it must be considered as positive law; but so far as immediate parties to mortgages were concerned, it was repealed by the third section of the act of February 5, 1840, (Paschal's Digest, Article 4986,) and as to subsequent purchasers with notice, it was repealed by the fourth section of the act concerning conveyances. (Paschal's Digest, Article 4988.)

APPEAL from Harrison.   Tried below before the Hon. J. B. Williamson.

G. G. Gregg, the appellee's intestate, made four mortgages in the year 1867, on the same property.   The appellant held the eldest of the four, and his was executed February 20, 1867.   The second was to H. Y. Hall, on May 20, 1867; the third to J. Y. Collin, on July 19, 1867; and the last to W. W. Nesbit, on the second of August, 1867.   None of them were filed for record until the twenty-ninth of October, 1867; on which day they were filed in the same order, with half an hour interval between them, the appellant's being the first and Nesbit's the last put on file for record.   The contest was as to which should have first satisfaction out of the mortgaged property; and the court below decided in favor of the last one, Nesbit's, presumably on the ground that his was the only one recorded within ninety days from its execution, and that the act of May 15, 1838, was in force and governed the question.

S. G. Newton, for the appellant.—Our legislation upon the subject of mortgages and their record as affecting this case, is embraced in the acts—

I.   Of Third Session Acts Rep., Tex., p. 12, May 15, 1838, which is "An act to provide for the foreclosing of mortgages on real and personal estate," and requires all mortgages to be recorded within ninety days from date, and enacts that "no mortgage shall take lien upon property mortgaged unless so recorded." (Pas. Dig., Art. 4985.)

II.   Act Fourth Con. Rep., February 5, 1840.   In Fourth Session Acts, p. 69, which is amendatory of the first named act, it is provided "that all mortgages shall be recorded as heretofore, but the lien created by the mortgage shall not be lost or destroyed as between the parties to it, if the *mortgagor* should fail to have it recorded within the time prescribed by law," (Pas. Dig., 4986);

and that "all laws and parts of laws now in force in any wise contravening with the provisions of this act, be and the same are hereby repealed."

Here I beg leave to call the attention of the court to the fact that Hartley, Oldham & White, and Paschal, have all, in their digests of the laws of Texas, substituted the word "mortgagee" for "mortgagor" above italicised, the latter being the correct word as printed in the session acts, and must be the correct reading.

III.　Act Fourth Cong. Rep., Tex., p. 153, approved February 5, 1840, entitled "An act concerning conveyances," the latter part of the fourth section of which provides as follows: "And all deeds of trust and mortgages whatsoever, which shall hereafter be made and executed, shall be void as to all creditors and subsequent purchasers for valuable consideration, without notice, unless they shall be acknowledged, or proved and lodged with the clerk, to be recorded according to the direction of this act—but the same as between the parties and their heirs, and as to all subsequent purchasers, with notice thereof, or without valuable consideration, shall nevertheless be valid and binding."

With these references to the several laws, it is to be determined what was the law in force at the time of the execution of the mortgages.　I apprehend it will not be contended that they are all alike in force, because their provisions are inconsistent and conflict with each other, in which case, we are told by all elementary writers and judicial opinions, that the last act must prevail. There does not seem to have been much judicial action by our courts upon the two first named laws.　I find but one reference to the first by our Supreme Court, and none to the second; there may be others, but they have not come under my observation.　I doubt their having been considered in force by the courts since 1840.

The reference alluded to is by Chief Justice Hemphill, in the

case of Crosby v. Huston, 1 Tex. Rep., 239, and is in the shape
of a query, as to what is the effect of the provision " that no
mortgage shall take lien upon property mortgaged, unless so
recorded, should a case arise under the law?"  He does not answer
the question, but in speaking of the enactment says: " The mo-
tives of the Legislature can only be conjectured.  It may perhaps
have been supposed that the most effective mode of protecting the
rights of third persons from secret mortgages, or incumbrances on
property, would be to make them inoperative between the parties
themselves until recorded."  Mathew Bacon says: " A statute
can do no wrong; but it may do some things that seem very
strange."  And so the next Congress seemed to have thought,
when they repealed this enactment and enacted the general law
concerning conveyances, and provided the same protection to third
and innocent parties contemplated by the first law, as supposed by
the Chief Justice.

That the latter is the law governing the subject matter of mort-
gages and their record, is evident from the language of Justice
Wheeler, in the case of Parks v. Willard, 1 Texas, 353, decided
at the same term of the court at which Crosby v. Huston was de-
termined.  After quoting the statute, he says :  " This provision
is not regarded as introducing a new rule; but only as declaratory
of the law, as recognized in the chancery, jurisprudence of
England and the United States.  It is but the declaration of posi-
tive law, to the effect that the want of registration shall avoid the
deed only as to creditors and subsequent purchasers without notice,
but that as to subsequent purchasers, with notice thereof, the deed
shall nevertheless be valid and binding."  If this be the law as
to creditors with notice, it follows as a corollary that mortgagees
with notice are alike affected.

The case of Givens v. Taylor, Hart & Co., 6 Texas, decided by
Justice Lipscomb, sustains the same view.  And so in the case of
Mayfield and another v. Averitt's administrator, 11 Texas, 140;

XXXIII—30

and so in the case of Ponton v. Ballard, 24 Texas, 621; and so in the case of Martel v. Somers, 26 Texas, 558.

The case of Allen v. Atchinson, 26 Texas, 628, appears to me to be conclusive upon the point contended for; for the question was then directly before the court. An administrator was directed by the probate court to sell property of an estate and retain a lien upon it for the payment of the unpaid purchase money; this was done, and the sale confirmed; the property passed into the hands of third parties, and the administrator of Allen afterwards brought suit for the unpaid purchase money, and to enforce the lien upon the property. Defendants set up want of notice of the lien. To this it was replied that the orders of the probate court, requiring the lien to be retained was notice; but in addition to this it was proved on the trial that Atchinson had actual notice when he purchased of the claim and lien of the administrator. There was no evidence of any record of the lien in the county clerk's office. It was held by the court that the record of the proceedings of the probate court was not notice of the lien, but that the party was affected by the actual notice given him, and used this language: "Notice of the lien upon' the property, if one was retained, should have been given by having the instrument by which it was created, duly registered in the manner pointed out by the statute for the record of deeds and mortgages; and if this was not done, third parties could not be affected by such lien, unless they were notified of it, or were, from other facts, charged with notice of it." In this case, as in that of Parks v. Willard, actual notice of the right of plaintiff is brought directly home to the party, and concludes the defendant. Are the facts less so in the case at bar, or is the law less applicable.

It may be contended that the acts referred to may be reconciled with each other, and are in *pari materia*. Then what is the effect of the twentieth and twenty-first sections of the act of the fifth Congress, February 5, 1841, pp. 168 and 169, in which this lan-

guage occurs in section 21 : "And such grant, deed or instrument, so delivered for registration, shall, according to its nature and character, have full effect, validity and priority from and after its date and presentation or delivery for registration, against subsequent purchasers and creditors; and such acknowledgment, or probate certificate and registration, or either, as between the parties and their legal representatives, and all subsequent purchasers and creditors, with actual notice, or reasonable information of the grant, deed or instrument, shall not be deemed requisite, in order to its full effect, validity or priority, according to its intrinsic nature." This act is certainly not in *pari materia* with the first two named acts, and is in conflict with them, and is cited in Parks v. Willard, in connection with Story's Eq. Jur., § 400, as enunciating the law at the time, and I am unable to see that it has been materially changed since. (See also 1 Story's Eq. Jur., § 400, 400 A., 400 B., 400 C., Redfield's edition.)

A reason for the law, as I maintain it is, may be deduced from section 395, 1 Story's Eq. Jur.; for if it was otherwise, designing parties might entirely defeat and defraud a poor and innocent holder of a *bona fide* mortgage of his rights under it, and thus the law would encourage the very evil it seeks to guard against. Suppose the mortgagee is too poor to pay the recording fees, or is induced to confide in the integrity of his mortgagor, and does not record his mortgage, and the mortgagor and a third party collude to defraud him of his lien, is the mortgagee to be prevented from giving the third party actual notice of his lien, and thus defeat the collusion? I apprehend no one would maintain the affirmative. And yet the sustaining of the judgment rendered in this case, would, in effect, do the very same thing. No! It would be gross injustice to allow a third party to defeat the just rights of others, by his own iniquitous bargain. He becomes by such conduct, *particeps criminis* with the fraudulent mortgagor, and in all such cases, courts of equity will hold him subordinate to the person whose rights he has thus sought to defraud or defeat.

In addition to the fact of actual notice being brought home to Nesbit, of the existence of plaintiff's mortgage, there is a remarkable coincidence in the filing of the several mortgages for record. First, that they were all filed on the same day; second, in the regular order of their execution or dates; and third, following just one-half an hour after each other. And to me this coincidence is significant—for it could hardly have been the result of accident, or just so have happened. If so, it was the most remarkable event of the world, in the combination of circumstances. I conclude, therefore, that they were all filed by the mortgagor himself, his agent or representative, or that they were filed by the several parties in interest under an agreement, and that the liens should attach in the order in which they were filed.

The filing of Nesbit's mortgage was not the result of diligence on his part, or it would have been filed long before. In either event the rights of the plaintiff were preserved. In the first instance there could have been no delivery to the mortgagee until the filing for record, and his lien would attach according to date and filing. In the second instance, the parties must have acknowledged the liens to exist in the order contemplated by the mortgagor. (1 Story, Eq. Jur., §§ 401, 402, 403.)

*Moore & Shelley* and *W. Steadman,* for the appellee.—The only question in this case is whether the third section of the act of May 11, 1838, for the foreclosing of mortgages on real and personal estate, as modified by the fourth section of the act of February 5, 1840 amendatory thereof, have been repealed. It is not pretended that the law as enacted by these statutes has been directly and expressly repealed by subsequent legislation on the subject. But it is insisted that it has been repealed by implication, by section four of the act, also of the fifth of February, 1840, concerning conveyances, and sections 20 and 21 of the act of limitations of February 5, 1841. (For these several laws

see Hart's Dig., Arts. 2759, 2762, 2767, 2776 and 2777 ; O. & W. Dig., Arts. 1723, 1726, 1742 and 1731; Paschal's Dig., Arts. 4985, 4936 and 4988.)   It may be observed that these different compilers of the statutes all treat the mortgage laws as still in force, and that Mr. Paschal, at least, does not seem to so regard sections 20 and 21 of the limitation law upon which appellant particularly relies.   The sections 20 and 21 of this law of 1841 should not be construed so as to give it any greater effect than the law of February 5, 1840, regulating conveyances.   And this last law was passed on the same day, but whether before or after the court cannot tell, with the amendment of the mortgage law, and cannot therefore be held to repeal the mortgage law by implication.   The repeal of laws by implication or construction is not favored.   And a subsequent law will not be held to repeal a former law in this way, if both may be so construed as to stand together.   This may be very easily done in respect to the mortgage law, which controlled the decision of this case in the court below, and the different sections of the statutes which appellants contend repealed it by implication.   (Smith's Com. on Statutes, 879.)   The statute in question has never been declared repealed by any decision of this court.   The only case to which we have been referred in appellant's brief, in which it has been discussed, is that of Crosby v. Huston, 1 Texas, 240 ; and in it the court very plainly recognized this law as still in force.   The point discussed by the court and left undetermined, was whether deeds of trust were to be considered as mortgages and subject to the law. None of the other cases cited by appellant involved the determination of this question, but are in respect to the validity and priority of judgment liens and the rights of prior and subsequent purchasers, as affected by the registration laws, irrespective of the influence these registration laws may have upon the statutes to regulate the foreclosing of mortgages.

DENISON, J.—The only question in this case is what force and effect is to be given to the final provision of the statute, (Paschal's Digest, Art. 4985,) "No mortgage shall take lien upon property unless so recorded." This law, improvident as it undoubtedly is, is clear, distinct and unambiguous, and while it remained unrepealed must be considered as positive law. But fortunately it remained in force but a short time.

On the fifth of February, 1840, by an amendatory act, it was provided "that all mortgages shall be recorded as heretofore, but the lien created by the mortgage shall not be lost or destroyed as between the parties to it, if the mortgagee should fail to have it recorded within the time prescribed by law." (Paschal's Digest, 4986.) This repealed that improvident law so far as it affected the parties to the mortgage. And on the same day was passed "An act concerning conveyances," the fourth section of which provides as follows : "And all deeds of trust and mortgages whatsoever, which shall hereafter be made and executed, shall be void as to all creditors and subsequent purchasers for valuable consideration without notice, unless the same shall be acknowledged and proved, and lodged with the clerk to be recorded, according to the directions of this act; but the same, as between the parties and their heirs, and as to all subsequent purchasers with notice thereof, shall nevertheless be valid and binding." (Acts 4 Con. Rep. Tex., 153.) This last cited act repealed the said provision in the former act, (Paschal's Digest, Art. 4985,) as it affected not only the parties, but all subsequent purchasers with notice, and leaving the law exactly as it was before the passage of the said improvident provision.

The judgment is therefore reversed and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.